# CHARLESTON,

## OHIO RIVER R'Y CO. *v.* SEHON.

*(ENGLISH, JUDGE, absent.)

Submitted January 22, 1890.—Decided March 15, 1890.

ISSUE OUT OF CHANCERY—SPECIFIC PERFORMANCE.

A cause in which it is held: *First*, upon the facts and circumstances appearing in the record, that the Circuit Court improperly directed an issue out of chancery; and *Second*, upon the pleadings and proofs, that the plaintiff is entitled to a specific execution of the contract alleged in its bill.

*J. H. Couch, Jr.,* and *V. B. Archer* for appellant.

*J. B. Menager, Gunn & Gibbons* and *C. E. Hogg* for appellee.

SNYDER, PRESIDENT:

In August 1887, the Ohio River Railroad Company exhibited its bill in the Circuit Court of Mason County against A. L. Sehon, in which it alleged that it was chartered under

*Counsel below.

the laws of this State to construct and operate a line of railroad from a point in Ohio County to Point Pleasant in Mason County; that for the purpose of effecting the said object it became necessary to acquire from the landholders along its route the right of way upon which to construct and operate its road, and that on January 25, 1886 it entered into a written contract with the defendant Sehon, a copy of which it filed as exhibit "A" with its bill, by which the said Sehon granted to it as a right of way a strip of land sixty feet wide through his farm in Mason County and released all damages which might be sustained by reason of the construction of its road, and further agreed to convey said strip of land by deed upon demand of the plaintiff; that in pursuance of said contract the plaintiff took possession of said right of way and constructed its road thereon and is now operating the same as a part of its line of railroad through the Ohio Valley; that in consideration of said right of way the plaintiff agreed to do certain things which it alleges it has fully performed; that in July 1887, many months after said railroad was constructed and in operation, the defendant brought his action of ejectment against plaintiff in the Circuit Court of Mason County to recover from plaintiff said right of way, which action is still pending and undetermined. The bill prays, that the defendant may be enjoined from prosecuting said action of ejectment and that he may be compelled to specifically execute said written contract by conveying to the plaintiff the said right of way, and for general relief.

On August 13, 1887, an injunction was awarded as prayed for in said bill. The defendant filed his answer to said bill in which he admits that the plaintiff has constructed and is operating its railroad as alleged in the bill, but he denies that he entered into with the plaintiff any such contract as that alleged in the bill; that while he did agree that the plaintiff might construct and operate its road through his land, he did not agree that it should do so upon that part of his land where said road is now located; and he denies that the paper exhibited with the bill is a copy of the contract entered into between him and the plaintiff. The defendant prays, that the said injunction may

be dissolved and that he may be allowed to prosecute his action of ejectment.

Depositions were taken and on May 18, 1888, the cause came on to be heard upon the pleadings and proofs and the motion of the defendant to dissolve the injunction; on consideration whereof the court declining then to pass upon said motion, ordered that a jury be empaneled to try "whether exhibit 'A' filed with the plaintiff's bill is a true and correct copy of the contract made between the plaintiff and defendant as charged in the plaintiff's bill, *and whether said exhibit 'A' sets forth the real contract made and entered into between the plaintiff and the defendant.*" Afterwards, on the motion of the plaintiff the court struck out of the issue the words, which are italicised; and thereupon the defendant moved the court to set aside the issue as improperly awarded, which motion the court overruled. The issue was tried by jury and a verdict returned finding "that said exhibit 'A' is not a true copy of the contract made between the plaintiff and defendant as charged in plaintiff's bill." The plaintiff then moved the court to set aside said verdict which motion the court overruled. On May 17, 1889, the court entered a decree dissolving the injunction and dismissing the plaintiff's bill, and from that decree the plaintiff has appealed.

The bill in this cause seeks to attain two objects : *First,* to enjoin the defendant from prosecuting his action of ejectment, and *second,* the specific execution of an alleged contract for the conveyance to the plaintiff by the defendant of a right of way through his farm. The errors assigned by the appellant are that the Circuit Court erred, *first,* in directing the issue to a jury ; and *second,* in dissolving the injunction and dismissing the bill. In my view of the cause, both of these assignments are well taken. The real and material controversy in this suit is, whether or not exhibit "A" filed with the plaintiff's bill is a true copy of the contract executed to the plaintiff by the defendant. The said exhibit is dated January 25, 1886, and among other things it provides as follows : "The said A. L. Sehon does hereby grant and convey unto the said Ohio River Railroad Company the full and free right of way of the width of sixty feet on the line as last located and pointed out by J. A. Fickinger, Esq., for

the road of said company, in, upon and through the lands of the said A. L. Sehon." The defendant virtually admits that said exhibit is a true copy of the contract in all respects, except as to the date, which he claims is about December 20, 1885, and the words "as last located" which he claims were "as now located," in the contract signed by him. The proof of the plaintiff shows, that there never were but two locations of the railroad through the land of the defendant: the one made in 1884, known as the "Gore location," which the defendant does not claim to be the one referred to in his contract, and the other made on January 6, 1886 by J. A. Fickinger. According to this contention there was but one location ever made by Fickinger; and, if this is true, then, the substitution of the words "as last located" for the words "as now located," would be an entirely immaterial alteration and would not in any degree change the purport and legal effect of the contract, because in either event the words would necessarily refer to and identify one and the same location, that is, the only one made by Fickinger.

The defendant in order to show, that the interchange of these words is material attempted to prove that three locations were made: First, the "Gore location" made in 1884; second, a location made by Fickinger in December, 1885, before the said contract was made, and third, a location made in January, 1886, after said contract had been executed. He claims that the location made in December, 1885, is the one referred to, "as now located," in the contract signed by him, and that the one located in January, 1886 is the one on which the road has been constructed. But even, if this were true the words "as last located" would have precisely the same effect, provided, as he claims, the contract had been executed in December 1885, before the location in January 1886 had been made. If, however, the defendant is mistaken either as to the date of the contract or as to the fact that three locations had been made, then, the proof offered by him is clearly insufficient to overcome the proof of the plaintiff that said exhibit "A" is substantially, if not literally, a true copy of the contract executed by the defendant. The defendant in his testimony says, there were three surveys through

his land; the first made by Gore in 1884, the second in December 1885 ,and the third in January 1886, the two latter having been made he says, by J. A. Fickinger. What the defendant means by three surveys is explained in the following question and answer in his testimony : "Q." Now, please state all you may know about the matter in controversy between you and the railroad, beginning back at the time of these surveys.

Answer—Well, sir, in the fall of '85, Mr. Fickinger asked me what I would take for a right of way through my place for a railroad where the Gore survey went through. I told him I would not take any sum they might give me for the first survey—I mean the Gore survey. Fickinger then asked me what I would take if they laid over toward a certain piece of low land before spoken of by the witnesses in this case. I told him then if they would go far enough west to drain the swamp and put me in a coal switch at or near the crossing of my coal track, I would give the company the right of way. He and I walked out to the proposed site or land, and he, Fickinger, showed me where he would run. I marked the course of the line with my knife on the fence. After that he run a line different from that--farther east, and that is the place where the road is constructed, making a difference of about 115 feet at one end where it passed out of my farm, and about seventy five or eighty feet where it enters my farm. Had he put the road on the line where he said he would put it, it would have drained the swamp which lies between the railroad and the public road. As the road is now located it does not drain the swamp, as the bottom of the railroad side ditch is about two feet higher than the swamp."

It will be observed there is no claim here that any survey was made in December, 1885. All he claims is that he and Fickinger " walked out to the *proposed site,*" and that Fickinger showed him " where he *would* run"—not where he did run — and that " I marked the course of the line with my knife on the fence." This is evidently what the defendant refers to as the survey of December, 1885, because in no other manner does he indicate or describe any survey as made at that time. Then, as showing what he meant by the other or January survey, he says :  " After that he run a line

different from that—further east, and that is the place where the road is constructed."

Thus it is .apparent that the three surveys referred to by the defendant are first, the Gore survey; second, the walking over and viewing of the *proposed* site in December 1880, and third, the survey afterwards run in January 1886, on which the road is built. What was done in December 1885, was plainly not a survey or location of a railroad in any proper senseof those terms. There may be a survey without a location, but there can not be a location of a railroad line without a survey. If, therefore, what was done in December 1885, did not amount to a location of the line of road, then, according to the defendant's own testimony, there never was but one location made by Fickinger, and that was necessarily the one made in January 1886. And since the contract, as admitted by the defendant, refers to the line "as now located" by Fickinger, the location must have preceded the execution of the contract, and consequently the date of the contract must be in January 1886 subsequent to the only survey made by Fickinger which was made in January 1886.

This, it seems to me, demonstrates conclusively that the defendant is mistaken in saying that the true date of the contract is in December 1885. In confirmation of this conclusion as to the date of the contract, L. T. Pilchard, one of the counsel for the defendant in this case and a witness on behalf of the defendant, testifies, that in the latter part of February 1886 Fickinger handed to him, among others, the original contract signed by the defendant for the purpose of having him as notary public take the defendant's acknowledgement of it, that at that time there were apparently no changes or interlineations in it, that he showed it to the defendant who did not object to the wording of it, "but would not acknowledge it for the reason, as he contended, that the railroad was not located as provided for in said contract." On cross-examination this witness says: "I am of the impression that the contract signed by Mr. Sehon was dated on January 26, 1886." Thus alone upon the defendants evidence, we might conclude that exhibit "A" is in substance, at least, a true copy of the contract executed by him.

But this question, it seems to me, is put beyond con-

troversy by the plaintiff's evidence. J. A. Fickinger, the engineer who located the railroad through the defendant's land and the draftsman of the contract, testifies positively, that exhibit "A" is a true copy of the contract. He further testifies, that he never made but one location of the railroad through defendant's land and that was on January 6, 1886; that on the same day just before making said location he ran a trial line west of the final location; and that after he made this final location on which the road is built he and the defendant looked over it and the defendant then "remarked that it was not just where he expected it, but that he would grant them the right of way, which he accordingly did;" and that the contract was drawn and signed after the location had been thus fixed and agreed upon; that soon after the date of the contract witness sent it to Geo. W. Thompson, the President of the Company, at Parkersburg.

Wm. Harry testifies that he was leveller and topographer of the party locating the line of the plaintiff's road; that he assisted Fickinger in the location through the defendant's land; and that but one location beside the Gore line was ever made through said land, and that was made by Fickinger in January 1886. This witness states facts and circumstances by which he fixes the date of the location, which show that it is scarcely possible that he can be mistaken. Geo. W. Thompson testifies that he received the original contract from Fickinger and handed it to E. W. Warnick, a clerk of the Company with directions to copy it, which he did, and that he believes exhibit "A" to be a true copy.

E. W. Warnick testifies, that by direction of Col. Thompson he copied the contract signed by the defendant and that said exhibit "A" is a true and correct copy. The evidence also shows that after said contract had been thus copied, the original was returned to Fickinger and by him put in the hands of L. T. Pilchard as hereinbefore stated, and that it has been lost or mislaid and can not now be found or produced.

My conclusion, therefore, upon the whole evidence and circumstances appearing in the cause at the time the court directed the issue to be tried by jury, is that it was the duty of the court to hold that the said exhibit "A" was in effect, if not literally, as I think it is, a true copy of the contract executed

by the defendant; and that consequently the court erred in directing said issue. I am further of opinion that according to the pleadings and proofs in this cause the plaintiff is entitled to the specific execution of said contract, and that the Circuit Court erred in dissolving the aforesaid injunction and in dismissing the plaintiff's bill. It is therefore considered that the decrees complained of be reversed, and that this cause be remanded to the Circuit Court with directions to that court to enter a decree granting to the plaintiff the relief prayed for in its bill upon proof that the plaintiff has complied with the terms of said contract on its part.

REVERSED. REMANDED.